IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| GAMBONE BROTHERS DEVELOPMENT | : | |
| COMPANY, ET AL. | : | NO.  06-1386 |

**MEMORANDUM**

**Padova, J.**                                                                                             **September 25, 2008**

I.       INTRODUCTION

On March 31, 2006, the United States of America commenced this action under the Fair Housing Amendments Act, 42 U.S.C. § 3614(a) ("FHAA"), and the Americans with Disabilities Act, 42 U.S.C. § 12188(b)(1)(B) ("ADA"), against Defendants Gambone Brothers Development Company; Gambone Construction Company; Gambone Brothers Organization, Inc.; Abram's Run Apartments Associates, L.P.; Fox Ridge Apartments, L.P.; Lakeside Inn Acquisition, L.P.; Lewis Road Apartments, L.P.; Henderson Square Apartments, L.P.; Henderson Square Phase 2, L.P. (collectively "Gambone"); Mike Rosen Architects, P.C. ("Rosen"); and Urwiler & Walter, Inc. ("U&W").[1]  The Defendants subsequently filed cross-claims against each other.[2]

---

[1] Two other defendants, Joseph A. Zaldo and Chambers Associates, Inc., have settled and are not longer part of the litigation.

[2] We note that both Rosen and U&W raised arguments in their respective summary judgment motions that any state law negligent design claim Gambone sought to assert would be barred by the statute of repose.  See 42 Pa. Cons. Stat. Ann. § 5536 ("a civil action or proceeding brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property must be commenced within 12 years after completion of construction of such improvement . . . "); Catanzaro v. Wasco Prods., Inc. 489 A.2d 262, 264 (Pa. Super. Ct. 1985) (holding that the statute as "not merely a statute of limitations, but instead is a statute of repose which effectively abolishes any cause of action which might have existed against a person within the purview of the act")  At oral argument, Gambone stated that it did not seek to state a separate cross-claim for negligent design.  Accordingly, we do

On July 19, 2007, the United States and all named Defendants agreed to a proposed resolution of the Government's claims, the terms of which were memorialized in a Consent Order filed with the Court on July 23, 2007. While the Consent Order resolved all claims filed by the United States, the parties specified that the Consent Order did not resolve the defendants' respective cross-claims. Consent Order ¶ 1. Consequently, the only claims remaining are the various cross-claims filed by the Defendants for indemnity and contribution. Gambone's cross-claim is the subject of pending cross-motions for summary judgment. For the following reasons, we grant summary judgment to Rosen and U&W on facts that are undisputed.

II.     FACTS

Gambone designed and constructed the six apartment complexes that were the subject of the Government's FHAA claims, Abram's Run, Fox Ridge, Fox Ridge Lakeside, Lakeview, Henderson I and Henderson II. The rental units in the six complexes are "dwellings" within the meaning of the Fair Housing Act. 42 U.S.C. § 3602(b) ("FHA").[3] The ground floor units are "covered multifamily dwellings" under the FHA.[4] Rosen, a licensed architectural firm, prepared the architectural drawings

---

not reach this issue.

    [3]      "Dwelling" means any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereon of any such building, structure, or portion thereof.

42 U.S.C. § 3602(b).

    [4]      As used in this subsection, the term "covered multifamily dwellings" means –
          (A) buildings consisting of 4 or more units if such buildings have one or more elevators; and
          (B) ground floor units in other buildings consisting of

for Fox Ridge, Fox Ridge Lakeside, Lakeview, Henderson I and Henderson II. Gambone asserts that U&W, an engineering firm, designed the engineering plans for Fox Ridge and Fox Ridge Lakeside.

Gambone violated the FHA, 42 U.S.C. § 3604(f)(3)(c), by failing to design and construct the six complexes in such a manner that: 1) the public use and common use portions of the dwellings are readily accessible to and usable by persons with disabilities; 2) all doors are designed to allow passage by handicapped person in wheelchairs; and 3) all premises within ground floor dwellings contain features of adaptive design. These actions constituted discrimination against the handicapped in the rental of dwellings under § 3604(f)(1) and (2), and constituted multiple violations of the FHA, establishing a pattern or practice of resistance to the full enjoyment of rights granted by the FHA. Gambone admits that its violations were intentional, willful, taken in disregard for the rights of the handicapped, and with the effect of discriminating against the handicapped.[5]

1.   LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute

---

4 or more units.

42 U.S.C. § 3604(f)(7).

[5]In the Consent Order, Gambone agreed to an injunction enjoining further discrimination against the handicapped, Consent Order ¶ 23, to undertake retrofitting at the six complexes to make them ADA compliant, id. ¶¶ 24-26, to pay into a settlement fund the amount of $307,000, id. ¶ 45, and pay a civil fine to the United States in the amount of $25,000, id. ¶ 50. Although subject to the terms of the injunction, neither Rosen nor U&W were required to pay any monetary damages.

is "material" if it might affect the outcome of the case under governing law. Id.

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response must, "by affidavits or otherwise as provided in this rule -- set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). That is, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact." Boykins v. Lucent Tech., Inc., 78 F. Supp. 2d 402, 407 (E.D. Pa. 2000) (citations omitted), aff'd 29 Fed. Appx. 100 (3rd Cir. 2002). Indeed, evidence introduced to defeat or support a motion for summary judgment must be capable of being admissible at trial. Callahan v. A.E.V., Inc., 182 F.3d 237, 252 n.11 (3d Cir. 1999) (citing Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., 998 F.2d 1224, 1234 n.9 (3d Cir. 1993)).

IV.   CONTRIBUTION AND INDEMNITY UNDER THE FHA.

    A.   The FHA and the FHAA

The threshold legal issue in the pending cross-motions is whether Congress provided an express or implied right to contribution and indemnity in the FHA and FHAA. To resolve this issue,

we first must examine Congress's purpose in enacting the FHA and later amending it by passing the FHAA.

The FHA was enacted "to provide . . . for fair housing throughout the United States." 42 U.S.C. § 3601.[6] To that end, it prohibits discrimination in the sale or rental of a dwelling based upon "race, color, religion, sex, familial status or national origin." 42 U.S.C. §§ 3604(a), (b). The FHA also prohibits discrimination against any person "because of a handicap" and requires "multifamily dwellings" to be constructed so that they are "readily accessible to and usable by handicapped persons." 42 U.S.C. § 3604(f). The FHA provides relief by way of a civil action for an "aggrieved person," defined to mean "any person who - (1) claims to have been injured by a discriminatory housing practice; or (2) believes that such a person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C.A. § 3602(i).[7]

Congress intended the FHA to be construed broadly in order to protect citizens against discriminatory housing practices. H.R. Rep. No. 100-711 at 23 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2173, 2184. In passing the FHAA, Congress noted and specifically approved of two Supreme Court cases which construed the FHA broadly before the 1988 Amendments. Id. The two

---

[6]The FHA, 42 U.S.C. §§ 3601-3619, was originally enacted as Title VIII of the Civil Rights Act of 1968. It originally proscribed housing practices that discriminate on the basis of race, color, national origin or religion. The FHA was amended in 1975 to bar discrimination on the basis of sex. Significant amendments to the FHA were enacted in 1988 in the FHAA. The FHAA expanded the protected class to include the handicapped and "families with children." The FHAA also created administrative enforcement procedures within the Department of Housing and Urban Development ("HUD") and removed barriers for private litigants. See H.R. Rep. No. 100-711, *reprinted in* 1988 U.S.C.C.A.N. 2173, 2184 (1988).

[7]The FHA provides a private right of action, 42 U.S.C. § 3613, and also provides for enforcement by the Attorney General in a civil action, 42 U.S.C. § 3614. An "aggrieved person" may commence an action "not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A).

cases were Havens Realty Corp. v. Coleman, 455 U.S. 363, 372 (1982) (allowing "testers" to have standing under the FHA when they did not themselves intend to purchase housing) and Gladstone Realtors v. Village of Bellwood, 441 U.S. 91 (1979) (affirming broad standing requirements for judicial and administrative review under the FHA and Title VIII of the Civil Rights Act of 1968). At the time of these decisions, the FHA did not contain a definition of "aggrieved person;" Congress specifically added the definition in the FHAA in 1988 in order to "reaffirm the broad holdings of these cases." H.R. Rep. No. 100-711 at 23, 1988 U.S.C.C.A.N. at 2184.

Congress adopted the prior judicial interpretation of the FHA that broadly construed the right to bring a private civil action. See id. ("The bill adopts as its definition language similar to that contained in Section 810 of existing law, as modified to reaffirm the broad holdings of these cases."). "The Supreme Court has established that Congress intended that standing under the Fair Housing Act be limited only by Article III [of the Constitution] and that the courts, as a result, may not create prudential barriers to standing under the Act." Fair Hous. Council of Suburban Philadelphia v. Montgomery Newspapers, 141 F.3d 71, 75 (3d Cir. 1998) (deciding whether summary judgment was appropriate for two FHA claims) (citing Havens Realty Corp, 455 U.S. at 372).[8]

A "discriminatory housing practice" is defined as an act which is "unlawful under section 3604 . . . of this title." 42 U.S.C. § 3602(f). The Government's Complaint, from which the present

---

[8]Despite this "broad interpretation," Montgomery Newspapers affirmed the District Court's granting of summary judgment to the defendants on one of the plaintiff's FHA claims because the plaintiff could not show injury flowing from acts of the defendants. Id. at 72. The plaintiff in Montgomery Newspapers claimed that defendants violated 42 U.S.C. § 3604(c) by printing allegedly discriminatory advertisements in their newspapers, but could not show an injury apart from the cost of the litigation itself. Id. at 76-78. The Court determined that "the injury alleged must result from the particular discriminatory acts, not from the general conduct of multiple parties over the course of years." Id. at 77 n.3.

claims all flow, alleged violations of the FHA stemming from discriminatory design and construction in the access to and features of the dwellings at the six complexes. (Compl. ¶ 24.) Under § 3604, it is unlawful

> to discriminate against any person, or to otherwise make unavailable or deny, a dwelling to any buyer or renter *because of a handicap of – (A) that buyer or renter, (B) a person residing in or intending to reside in that dwelling after it is sold, rented or made available; or (c) any person associated with that buyer or renter.*

42 U.S.C. § 3604(f)(1) (emphasis added). "'Handicap' means, with respect to a person – (1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment . . . ." 42 U.S.C. § 3602(h).

Finally, in § 3604(f)(3), Congress provided that,

> for the purposes of this subsection, discrimination includes –
> . . .
> (c) in connection with the *design* and construction of covered multifamily dwellings for first occupancy after the date that is 30 months after September 13, 1988, a failure to *design* and construct those dwellings in such a manner that – (i) the public use and common use portions of such dwellings are readily accessible to and useable by handicapped persons; (ii) all the doors designed to allow passage into and within all premises within such dwellings are sufficiently wide to allow passage by handicapped persons in wheelchairs; and (iii) all premises within such dwellings contain the following features of adaptive design: (I) an accessible route into and through the dwelling; (II) light switches, electrical outlets, thermostats, and other environmental controls in accessible locations; (III) reinforcements in bathroom walls to allow later installation of grab bars; and (IV) useable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

42 U.S.C. § 3604(f)(3) (emphasis added). Gambone's cross-claim alleges that Rosen and U&W improperly designed the dwellings and therefore engaged in discriminatory acts and are liable to Gambone for contribution and indemnity for damages flowing from the faulty design.

    B.    <u>The Right to Contribution or Indemnity</u>

The United States Court of Appeals for the Third Circuit has never addressed the specific issue of whether there is a right to contribution or indemnity under the FHA. To date, only one other court has directly addressed the issue. In United States v. Quality Built Constr. Inc., 309 F. Supp. 2d 767 (E.D.N.C. 2003), the court faced an almost identical set of material facts and held that a builder did not have standing under the FHA to sue a housing designer upon whose designs he relied to his detriment.

The relevant facts in Quality Built are indistinguishable from the present case. The Government proceeded under the FHA in a civil action against a builder and architect for failing to design dwellings for handicap accessibility. The Government later resolved the action with respect to the architect via a consent order. Id. at 771. Subsequently, the builder asserted a cross-claim for contribution against the architect under the FHA and state law and the architect moved for summary judgment. Id. at 778. The court granted summary judgment to the architect with respect to contribution under FHA.[9] Id.

The Quality Built court directly considered the question of "whether a cause of action for contribution or indemnity is implied by the [FHA]." Id. at 778. The court analyzed the statute as well as the legislative history and answered the question in the negative, finding that there was no explicit or implicit cause of action for indemnity or contribution in the statutory language or history of the FHA. Id. at 778-779. The court found no cases directly on point, but analogized the FHA to the Equal Pay Act of 1963, and found applicable the United States Supreme Court's reasoning in Northwest Airlines, Inc. v. Transp. Workers of Am., 451 U.S. 77 (1981).

---

[9]The court denied summary judgment under state law, finding that North Carolina law "may allow for some form of contribution." Id. at 779.

In <u>Northwest Airlines</u> the Supreme Court determined that an employer held liable under the Equal Pay Act of 1963 could not seek contribution from the employee's union, which was partially responsible for the violations. The Court found that "it cannot possibly be said that employers are members of the class for whose especial benefit either the Equal Pay Act or Title VII was enacted. To the contrary, both statutes are expressly directed against employers; Congress intended in these statutes to regulate their conduct for the benefit of employees." <u>Id.</u> at 91. The Court also considered the structure of the Equal Pay Act and concluded that "[t]he comprehensive character of the remedial scheme expressly fashioned by Congress strongly evidences an intent not to authorize additional remedies." <u>Id.</u> at 93-94. Lastly, the Court examined the legislative history of the Equal Pay Act to see whether there was anything in that history to support an implied right to contribution. The Court stated that "unless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." <u>Id.</u> at 94. The Court concluded that no express or implied right to contribution could be found in the legislative history of the statutes; it also determined that no such right existed under federal common law. <u>Id.</u> at 95.

Later in the same term, the Supreme Court applied the holding of <u>Northwest Airlines</u> in <u>Texas Indus., Inc. v. Radcliff Materials, Inc.</u>, 451 U.S. 630 (1981), a case raising the issue of whether there was an express or implied right to contribution between co-defendants under the Sherman and Clayton Acts. Citing <u>Northwest Airlines</u>, the Court held that "a right to contribution may arise in either of two ways: first, through the affirmative creation of a right of action by Congress, either expressly or by clear implication; or, second, through the power of federal courts to fashion a federal common law of contribution." <u>Texas Indus.</u> at 638 (citing <u>Northwest Airlines</u>, 451 U.S. at 90-91.)

As to federal common law, the Court cautioned that,

> There is, of course, "no federal general common law." Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Nevertheless, the Court has recognized the need and authority in some limited areas to formulate what has come to be known as "federal common law." See United States v. Standard Oil Co., 332 U.S. 301, 308, 67 S.Ct. 1604, 1608, 91 L.Ed. 2067 (1947). These instances are "few and restricted," Wheeldin v. Wheeler, 373 U.S. 647, 651, 83 S.Ct. 1441, 1445, 10 L.Ed.2d 605 (1963), and fall into essentially two categories: those in which a federal rule of decision is "necessary to protect uniquely federal interests," Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 426, 84 S.Ct. 923, 939, 11 L.Ed.2d 804 (1964), and those in which Congress has given the courts the power to develop substantive law, Wheeldin v. Wheeler, supra, at 652, 83 S.Ct., at 1445.

Texas Indus. at 640. The Court offered as examples of "unique federal interests" those "concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases." Id. at 641 (internal footnotes omitted). While, in these areas, federal common law may permit the creation of an implied right to contribution and indemnity, the Court found that "contribution among antitrust wrongdoers does not involve the duties of the Federal Government, the distribution of powers in our federal system, or matters necessarily subject to federal control even in the absence of statutory authority," and thus did not "implicate 'uniquely federal interests' of the kind that oblige courts to formulate federal common law." Id. at 642.

"Federal common law also may come into play when Congress has vested jurisdiction in the federal courts and empowered them to create governing rules of law." Id. (citing Wheeldin, 373 U.S. at 652. The Court concluded, however, that it did not necessarily follow from the broad language of the Sherman Act, forbidding "[e]very contract, combination . . . , or conspiracy, in restraint of trade" and "monopoliz[ing], or attempt[ing] to monopolize, . . . any part of the trade or commerce," that Congress "intended to give courts as wide discretion in formulating remedies to enforce the

provisions of the Sherman Act or the kind of relief sought through contribution." Id. at 643-44. Rather, the Court held, in contrast to the sweeping language of §§ 1 and 2 of the Sherman Act, the remedial provisions defined in the antitrust laws were detailed and specific, adding "(t)he presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement." Id. at 645 (quoting Northwest Airlines, 451 U.S., at 97). The Court found that presumption "strong indeed in the context of antitrust violations; the continuing existence of this statutory scheme for 90 years without amendments authorizing contribution is not without significance. There is nothing in the statute itself, in its legislative history, or in the overall regulatory scheme to suggest that Congress intended courts to have the power to alter or supplement the remedies enacted." Id.

The Quality Built decision applied the Northwest Airlines holding to the FHA, finding no implied or express right to contribution. Paralleling the analysis of Northwest Airlines in search of any implicit statutory right to contribution or indemnification, the Quality Built Court first concluded that a builder is "clearly not among the class which the statute is intended to protect, but rather [is] the part[y] whose conduct the statute was intended to regulate." Quality Built, 309 F. Supp. 2d at 778. Next, examining the structure of the statute, the Court held that "a review of the FHAA reveals that like the statutes at issue in Northwest, the FHAA is a comprehensive statute designed to eliminate discrimination. . . . Nothing in the structure of the FHAA supports a finding that a right to contribution is implied. Id. at 778 (citing Northwest Airlines, 451 U.S. at 93). Finally, looking to the legislative history to see whether there was anything that would support a right to contribution, the Court concluded:

>There is nothing in the legislative history of the FHAA which states or implies a right to contribution on behalf of Defendants. Consequently, the Court finds that there is nothing to suggest that Congress intended to create a right to contribution or indemnity for one party liable under the Act from another party potentially liable under the Act. Furthermore, as the Supreme Court held in Northwest, federal common law cannot provide a basis for contribution or indemnity in this context.

Id. at 779.

    C.    <u>Analysis</u>

Gambone argues that it falls within the broad range of "aggrieved persons" who may seek relief under the FHA, and thus it is entitled to contribution and indemnity. (Gambone Mem. In Opp. To U&W Cross-Mot. at 8.) Gambone asserts that numerous courts, including the Supreme Court, have recognized that "aggrieved persons" can include builders, developers, corporations, and limited partnerships. (Id. at 17-18.) Although Gambone is correct that courts have broadly interpreted the "aggrieved persons" requirements of the FHA, merely being an "aggrieved person" does not satisfy the test established by the Supreme Court in Northwest Airlines and Texas Indus. to determine whether a cause of action for contribution and indemnity exists. No case that Gambone has cited has addressed the issue of whether a defendant, that is itself liable under FHA, may assert its own derivative claim against a co-defendant.[10] We find that the statutory language discussed above, and

---

[10]Gambone cites several district court cases for the proposition that each participant in the design and construction process is liable under the FHA and has an independent duty to comply with the Act. (See Gambone Mem. (Docket Entry 63) at 10-13). This is a correct assertion; however each of those cases involved liability on a **first-party claim** under the FHA, not a derivative claim asserting contribution and indemnity. Specifically, none of the cases Gambone cites recognize a cause of action for contribution and indemnity. See United States v. Tanski, Civ. A. 04-714, 2007 WL 1017020, *22 (N.D.N.Y. March 30, 2007) (holding that minor participants in the design of dwellings may be held liable to the United States on its **first-party claim** because "all participants in the process as a whole are bound to follow the FHA."); Montana Fair Hous., Inc. v. Am. Capital Dev., Inc., 81 F. Supp. 2d 1057 (D. Mont. 1999) (holding that landlord of low-income housing project had nondelegable duty to ensure compliance, and thus was responsible on **first-party claim** for contractor's failure to install front-loading laundry machines); United States v. Pac. Northwest

the structure and legislative history of the FHA, simply do not support the contention that there is an expressed or implied right of action for contribution.

Applying the analysis of Northwest Airlines and Texas Indus., it is clear that Gambone is not a member of the class Congress sought to protect in passing the FHAA. Under the statutory definitions, an "aggrieved person" entitled to bring an action "includes any person who - (1) claims to have been injured by a discriminatory housing practice; or (2) believes that such a person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. § 3602(i). A "discriminatory housing practice" includes a discriminatory act against the "handicapped.". 42 U.S.C. § 3602(f). Gambone is not a handicapped person, and it has not shown that it was discriminated against because of a handicap. It also was not a buyer, renter, or resident of a dwelling – a requirement to recover under 42 U.S.C. § 3604(f)(1). Similarly, recovery under § 3604(f)(2) is predicated upon showing discrimination in the "terms, conditions, or privileges of sale or rental of a dwelling . . . because of a handicap. . . ." Gambone cannot show that, as a builder, it was

---

Elec., Inc., Civ. 01-19, 2003 WL 24573548, at *14 (D. Idaho Mar. 21, 2003) (holding on **first-party claim** of the United States, where each defendant was involved in the design and/or construction of one or more of the multi-family housing complexes at issue, each had an independent, non-delegable duty to comply with the requirements of the FHA).

      While Gambone is also correct that builders have successfully sued under the FHA, none of the cases it cites resolve the issue of whether the FHA permits a suit for contribution and indemnity. See City of Cuyahoga Falls v. Buckeye Cmty. Hope Found., Inc., 538 U.S. 188, 199-200 (2003) (deciding claim under Equal Protection grounds after the respondent non-profit housing developer abandoned its FHA disparate impact claim); New West, L.P. v. City of Joliet, 491 F.3d 717, 721 (7th Cir. 2007) (permitting owner of complex standing bring **first-party claim**; holding that only the Constitution's own standing requirements, and not any prudential supplements, apply to litigation under FHA); Berlickij v. Town of Castleton, 248 F. Supp. 2d 335 (D. Vt. 2003) (finding that zoning officer had standing to bring **first-party retaliation claim** under FHA); Hallmark Developers, Inc. v. Fulton County, Georgia, 386 F. Supp. 2d 1369, 1381 (N.D. Ga. 2005) (holding that developers who sought to build low-income residences had standing to bring **first-party** FHA challenge against county's denial of rezoning request; and finding that developers qualified as "aggrieved persons").

discriminated against because of a handicap in relation to the sale or rental of a dwelling.

Gambone argues that it is a member of the "class for whose especial benefit" the FHA was enacted because of the language of § 3604(f)(3). Congress provided therein that, "for the purposes of this subsection, discrimination includes" a failure to "design" multifamily dwellings to make them handicapped accessible. 42 U.S.C. § 3604(f)(3). Gambone's cross-claim alleges that Rosen and U&W were the parties that: 1) actually designed the dwellings, 2) engaged in the discriminatory acts for which Gambone was held civilly liable to the United States, and 3) are thus liable to Gambone for damages flowing from the faulty designs. However, to the extent that Gambone seeks to recover contribution and indemnity on the basis of this subsection, its argument ignores the fact that the definition of discrimination is explicitly limited to "for the purposes of this subsection," which provides a cause of action only to the handicapped persons actually damaged by the unfair housing practice. Id.

Gambone's argument improperly substitutes being an "aggrieved person" entitled to sue under the FHA with the contribution and indemnity factor discussed in Northwest Airlines and Texas Indus., i.e., being a member of the class Congress sought to protect when passing the statute. Being a "member of the class for whose especial benefit [the statue] was enacted," concerns whether Congress created a cause of action upon which one may sue. Being an "aggrieved person" concerns whether a particular plaintiff qualifies to bring the cause of action Congress has created. Thus, whether Gambone is an aggrieved person is a distinct question from whether Congress created a cause of action for contribution and indemnity.

In enacting the FHA, Congress limited recovery for handicap discrimination to handicapped persons. We agree with the holding of Quality Built that a defendant that is itself liable under the

FHA for handicap discrimination is "clearly not among the class which the statute is intended to protect, but rather [is] the part[y] whose conduct the statute was intended to regulate." Quality Built, 309 F. Supp. 2d at 778. In passing the statute, Congress created the same type of "comprehensive legislative scheme including an integrated system of procedures for enforcement" that was at issue in Texas Indus. and Northwest Airlines. Consequently, "the presumption that a remedy was deliberately omitted from a statute is strongest." Texas Indus. 451 U.S. at 645 (quoting Northwest Airlines, 451 U.S. at 97). Congress failed to provide a contribution and indemnity remedy to permit one defendant from asserting joint and several liability against co-defendants. This failure raises the presumption that Congress deliberately intended that each co-defendant have a non-indemnifiable, non-delegable duty to comply with the FHA and to compensate others for its own conduct.

Indeed, that is the teaching of the cases Gambone cites. In Tanski, the Court held that "all participants in the [design] process as a whole are bound to follow the FHA." Tanski, 2007 WL 1017020, at *22. In Montana Fair Hous., the Court stressed that compliance with the FHA's non-discrimination provisions was a "nondelegable duty." Montana Fair Hous, 81 F. Supp. 2d at 1068. Thus the landlord was liable for the contractor's failure to install front-loading laundry machines. In Pac. Northwest Elec., the Court also held that each defendant involved in the design and/or construction had an independent, non-delegable duty to comply with the requirements of the FHA. Pac. Northwest Elec., 2003 WL 24573548, at *14. The existence of non-delegable duties to comply with the FHA is inconsistent with an implied right to seek contribution from co-defendants on the basis of joint and several liability.

Finally, although the Quality Built Court did not discuss the legislative history with any specificity, we agree with its conclusion that the legislative history of the FHAA does not support

the finding of an implied right to contribution. While broadening the definition of discrimination to include the handicapped and adding additional anti-discriminatory housing practices based on handicap, Congress, in discussing the need for enhancing remedies to combat discrimination in housing, determined that enforcement should be bolstered by giving HUD new powers, not by permitting co-defendants to sue each other for contribution. See H. R. Rep. No. 100-711, at 16, *reprinted in* 1988 U.S.C.C.A.N. 2173, 2177.[11] Notably, in discussing the need for additional private party remedies, the House Report states that "Section 813(c) provides for the types of relief a court may grant. **This section is intended to continue the types of relief that are provided under current law**, but removes the $1000 limitation on the award of punitive damages." Id. at 39-40, 1988 U.S.C.C.A.N. at 2200-01 (emphasis added; internal footnotes omitted).

Accordingly, applying the Texas Indus. and Northwest Airlines analysis, we conclude that there is no implied right to contribution and indemnity among co-defendants liable to the United

---

[11]The House Report states that:
> Private persons and fair housing organizations are burdened with primary enforcement responsibility. Although private enforcement has achieved some success, it is restricted by the limited financial resources of litigants and the bar, and by disincentives in the law itself. The federal enforcement role is severely limited.
> Under existing law, although HUD investigates housing discrimination complaints, it can use only "informal methods of conference, conciliation, and persuasion" in an attempt to resolve them. HUD can do no more than this and lacks the power even to bring the parties to the conciliation table. HUD cannot sue violators to enforce the law, as in other civil rights laws.
> H.R. 1158 creates an administrative enforcement mechanism, so the federal government can and will take an active role in enforcing the law.

H. R. Rep. No. 100-711 at 16 (internal footnotes omitted).

States under the FHA. Thus, Gambone's Motion for Summary Judgment on its own claim is denied; and Rosen's and U&W's Motions for Partial Summary Judgment on Gambone's claim are granted.[12]

V.  CONCLUSION

For the reasons stated, we deny Gambone's motion for summary judgment on its own claim for contribution and indemnity under the FHA and grant summary judgment to Rosen and U&W on that claim. Because this decision resolves all remaining claims in the case, we do not reach the other arguments raised by the parties.[13]

An appropriate order follows.

---

[12]We note that, without the benefit of any case citations, Gambone argues in its responses to the other parties' summary judgment motions that, if we find its cross-claim for contribution and indemnity is invalid, the Consent Order must be set aside on equitable grounds. We reject this argument.

In the Consent Order the parties specified that their respective cross-claims remained unresolved. Consent Order ¶ 1. They did not provide that the terms of the Consent Order were contingent upon, or subject to renegotiation based upon, our determination of the cross-claims. There is no injustice to Gambone arising from Rosen and U&W continuing to litigate the claims left unresolved in the Consent Order since that Order contemplated continued litigation and, of course, the possibility that they would win the issue.

In short, Gambone fails to state any grounds for equitable relief. Additionally, we agree with Rosen and U&W that Gambone's argument essentially constitutes a motion pursuant to Fed. R. Civ. P. 60(b) for relief from the Consent Order without any showing of mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, or fraud.

[13]In the Order that follows, we dismiss Rosen's and U&W's cross-claims against Gambone for state law statutory, common law and contractual indemnity and contribution as moot. Gambone's claim against Rosen and U&W fails, and Rosen and U&W paid no monetary damages to the United States. The summary judgment record establishes no other monetary damages incurred by Rosen and U&W upon which indemnification and contribution may be had.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| GAMBONE BROTHERS DEVELOPMENT COMPANY, ET AL. | : : | NO. 06-1386 |

**ORDER**

**AND NOW**, this 25th day of September, 2008, upon consideration of the Motion for Partial Summary Judgment of Defendants Gambone Brothers Development Company; Gambone Construction Company; Gambone Brothers Organization, Inc.; Abram's Run Apartments Associates, L.P.; Fox Ridge Apartments, L.P.; Lakeside Inn Acquisition, L.P.; Lewis Road Apartments, L.P.; Henderson Square Apartments, L.P.; Henderson Square Phase 2, L.P. (Docket Entry 63); the Cross Motion for Summary Judgment of Mike Rosen Architects, P.C. (Docket Entry 80); and the Motion for Partial Summary Judgment of Urwiler & Walter, Inc. (Docket Entry 82), **IT IS HEREBY ORDERED** as follows:

1. The Motion for Partial Summary Judgment of Defendants Gambone Brothers Development Company; Gambone Construction Company; Gambone Brothers Organization, Inc.; Abram's Run Apartments Associates, L.P.; Fox Ridge Apartments, L.P.; Lakeside Inn Acquisition, L.P.; Lewis Road Apartments, L.P.; Henderson Square Apartments, L.P.; Henderson Square Phase 2, L.P. is **DENIED**.

2. The Cross Motion for Summary Judgment of Mike Rosen Architects, P.C. is **GRANTED**.

3. The Motion for Partial Summary Judgment of Urwiler & Walter, Inc. is **GRANTED**.

4. The Motion of Mike Rosen Architects, P.C. to File Reply Brief (Docket Entry 93) is **GRANTED**.

5. The Motion of Urwiler & Walter, Inc. For Leave to File Reply Brief (Docket Entry 94) is **GRANTED**.

6. Judgment is **ENTERED** in favor of Mike Rosen Architects, P.C. and Urwiler & Walter, Inc. and against Gambone Brothers Development Company; Gambone Construction Company; Gambone Brothers Organization, Inc.; Abram's Run Apartments Associates, L.P.; Fox Ridge Apartments, L.P.; Lakeside Inn Acquisition, L.P.; Lewis Road Apartments, L.P.; Henderson Square Apartments, L.P.; Henderson Square Phase 2, L.P.

7. The cross-claims of Mike Rosen Architects, P.C. and Urwiler & Walter, Inc. are **DISMISSED** as moot.

8. The Clerk of Court is directed to mark this case closed.

BY THE COURT:

S/John R. Padova

John R. Padova, J.